**In re CHARLES JASON R., JR. et al.**

Supreme Judicial Court of Maine.

Argued March 19, 1990.
Decided April 10, 1990.

Francis M. Jackson (orally), Portland, Jean Walsh, Guardian Ad Litem, Bourque & Clegg, Sanford, for appellants.

Margaret H. Semple, Anita M. St. Onge (orally), Asst. Attys. Gen., Augusta, for appellee.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

On the petition of the Department of Human Services, the District Court (Springvale, *Crowley, J.*) on February 1, 1989, entered a protective order for Charles Jason R., Jr. (Jason) and John R., then aged nine and two years, respectively. The District Court's protective order permitted both parents to remain in the home and to retain custody of the boys, but prohibited the father from having unsupervised contact with them. The order also required the family to undergo individual and group evaluation by a specified licensed clinical psychologist and to follow that professional's recommendations for treatment. The Superior Court (York County, *Fritzsche, J.*) affirmed. On their appeal to this court, the parents challenge only the District Court's finding of jeopardy, and not the terms of the dispositional order. We find no reversible error in the District Court's decision.

Pursuant to 22 M.R.S.A. § 4035 (Supp. 1989), the District Court found the boys to be in jeopardy because the father in 1983 had subjected Jason to "very serious sexual abuse," but had never admitted or sought treatment for that behavior. The only evidence before the court showing that the father ever abused Jason was a transcript of Jason's statement to a DHS caseworker in 1983 and a report by Jason's mother in 1983 of what Jason had told her about the alleged abuse. At the time of the District Court hearing, Jason did not remember making those statements and he denied that his father had ever abused him. Although Jason's mother on the stand admitted she reported Jason's statement to authorities in 1983, she declared her present belief that her husband never had abused Jason.

■ In admitting and relying on hearsay evidence of Jason's statements, the District Court cited 22 M.R.S.A. § 4007(2) (Supp. 1989), which authorizes the judge in child protection proceedings to "admit and consider oral or written evidence of out-of-court statements made by a child, and [to] rely on that evidence to the extent of its probative value." The parents contend that their due process rights were violated by the court's reliance solely on the out-of-court statements made by their son when he was less than four years of age. We do not agree.

■ Whether the trial court's reliance pursuant to section 4007(2) on hearsay statements of a young child satisfies due process

> turns on the balancing of the "three distinct factors" specified in *Mathews v. Eldridge*, 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18] (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.

*Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). Applying those factors, we first recognize the importance of the parents' right to unrestricted custody of their children. On the other hand, the disposition order affecting that right in the case at bar is "neither final nor irrevocable." *See In re Sabrina M.*, 460 A.2d 1009, 1015 (Me.1983). As to the second factor, section 4007(2) allows trial courts to rely on a child's hearsay statement only "to the extent of its probative value." [1] In deciding what weight to

---

1. In this respect, our statute is very similar to the statutes of other states that also permit the introduction of a child's out-of-court statements when those statements contain sufficient indicia of reliability. *See, e.g.,* Ariz.Rev.Stat.Ann. § 8–238 (1989); Ga.Code Ann. § 24–3–16 (Supp.

accord Jason's 1983 statements, the court specifically identified several indicia of reliability. The court considered Jason's graphic and detailed descriptions of the sexual abuse by his father, unlikely to be made up by a small child, and the absence of any evidence to suggest that "the idea of sexual abuse was planted in the child's mind," as the parents now contend. The court also noted that Jason described the sex acts prior to being questioned by DHS, reducing the possibility that his story was the product of an interviewer's leading questions. The court further noted that Jason's mother after divorcing Jason's father has remarried him and apparently now enjoys a peaceful relationship with him, a change of circumstances that may color her current beliefs about whether abuse occurred in 1983. These factors minimize the risk that the court's reliance on Jason's out-of-court statements led to an erroneous finding of jeopardy. As to the third and final factor, the State has an overwhelming interest in preserving and promoting the welfare of these children and the out-of-court statement of Jason is the principal evidence available to the State. Thus, upon a balancing of the *Mathews v. Eldridge* factors, we reject the parents' contention that application of section 4007(2) in this case violated their due process rights.

 Once admitted and relied upon by the court, Jason's recorded statement amply supported the court's finding by a preponderance that the father in 1983 had sexually abused him very seriously. The question then became whether five years later both children were in jeopardy of sexual abuse by their father requiring the issuance of a protective order. On that factual question the court had before it evidence that the father has consistently denied that he ever sexually abused Jason in any way and has consistently refused treatment for his abusive behavior. On that evidence, the court could rationally infer that in such circumstances the risk of recurrence of the father's sexual abuse of his own children put them in jeopardy. In addition, the court heard testimony of Jane

McCarty, a licensed social worker experienced in the treatment of sexual abusers, that children remain at risk of recurrent abuse if an adult abuser within the home refuses to acknowledge the impropriety of past abusive conduct and to accept counseling help. The court acted within its discretion in admitting McCarty's testimony, *see* M.R.Evid. 702, and we defer to the trial court's assessment of its credibility and weight. *See In re Misty Lee H.*, 529 A.2d 331, 333 (Me.1987).

We find no merit in the parents' other contentions on appeal.

The entry is: Judgment affirmed.

All concurring.