2002 ME 151

## In re Heather G. et al.

Supreme Judicial Court of Maine.

Argued: May 8, 2002.

Decided: Sept. 12, 2002.

Christopher M. Leger, (orally), Kelley Law Offices, Caribou, for appellant.

G. Steven Rowe, Attorney General, Janice S. Stuver, Asst. Attorney General (orally), Matthew Pollack, Asst. Attorney General, Heidi Silver, Asst. Attorney General, Augusta, for appellee.

Kathleen T. O'Boyle, Esq., Presque Isle, Guardian ad Litem.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The mother [1] of Heather and Kennith G. appeals from a judgment entered in the District Court (Presque Isle, *Griffiths, J.*) terminating her parental rights. The mother contends that the trial court ignored all of the probative evidence presented by her at the termination hearing and made clear errors in its findings of facts. Because of these infirmities we vacate the order terminating the mother's parental rights.

## I. BACKGROUND

[¶ 2] For several years the Department of Human Services received concerned reports about the mother and her children: in 1995, she was drinking while nursing a newborn child; in 1996, she wrote "bizarre, psychotic" letters to her sister; in 1997, her two year old was "wandering" outside the home [2] and she left the daughter with "total strangers in a beauty shop for over an hour." In 1998, the mother was diagnosed with paranoid schizophrenia and post traumatic stress disorder. In January of 1999, she asked DHS to take custody of Heather and Kennith because she had to serve time for an aggravated operating under the influence conviction that arose out of 1995 conduct. The mother received treatment during the incarcera-

---

1. Heather's alleged father denies paternity. Kennith's father is deceased.

2. Vicky Delong, a child protective caseworker, testified that the mother called the police when she could not find Heather when she went outside to look for her.

tion, and continued receiving treatment after her release.

[¶3] In April of 1999, DHS filed a petition for a child protection order because of the children's developmental problems and the grandfather's "untreated sex offender" status, and the mother's wish to visit with him. The hearing on the child protection petition was continued until October. A jeopardy order was issued in November 1999 (Presque Isle, *Griffiths, J.*). After judicial review in May of 2000, the court ordered, *inter alia,* that the mother continue her counseling, that in-home counseling and supervision proceed during visits, and that the team consisting of the mother's therapist, the children's therapist, the visit supervisors from Catholic Charities, and representatives from DHS, assess the situation after two months. The order characterized "the extent of the parent's compliance" with the case plan as "good."

[¶4] Following the September judicial review the court ordered that the weekly visits would transition to being partially unsupervised, that the mother would participate in family therapy with the children, and that there would be two unsupervised overnights and then unsupervised weekends. Additionally, beginning December 15, the children would be placed with the mother full-time on a trial basis.

[¶5] A petition for the termination of parental rights was filed in January of 2001. The core of the petition related that "[the mother] still does not understand that her father is a sex offender and is not safe to be around the children, [nor] the dynamics of sexual abuse." The hearing commenced on March 9, 2001, and continued on March 13, April 6, May 18 and May 29, 2001. The mother presented her evidence on May 29.

[¶6] The court issued findings of fact and conclusions of law ·terminating the mother's parental rights to Heather and Kennith. The court, in its finding of facts, discussed the testimony of all but one of the State's witnesses, but did not mention or discuss any of the witnesses presented by the mother on May 29. The court found "by clear and convincing evidence"[3] that the mother was unable and unwilling to protect the children from jeopardy and these circumstances were unlikely to change within a time reasonably calculated to meet their needs, and, alternatively, she has been unwilling or unable to take responsibility within a time reasonably calculated to meet their needs, and that termination was in their best interests.[4] The mother filed this timely appeal.

## II. DISCUSSION

■ [¶7] The mother challenges the decision to terminate her parental rights asserting that the court ignored the evidence she presented and made findings that were

---

**3.** Section 4055(1) provides alternative grounds for termination:

    B. Either:
      (1) The parent consents to the termination . . .; or
      (2) The court finds, based on clear and convincing evidence, that:
      (a) Termination is in the best interest of the child; and
      (b) Either:
      (i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet the child's needs;
      (ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;
      (iii) The child has been abandoned; or
      (iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

  22 M.R.S.A. § 4055(1)(B) (1992).

**4.** The court made the same finding about Heather's father, who denied paternity.

clearly erroneous. We address each of these contentions in turn.

[¶ 8] Over the years, courts have devised procedural standards to help prevent an erroneous termination of parental rights. The United States Supreme Court, in *Santosky v. Kramer*, 455 U.S. 745, 761, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), established that termination proceedings must be guided by the clear and convincing standard because "at the fact-finding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures." The severity and irrevocability of a termination requires procedures that engender accurate and impartial fact-finding. *See id.* at 759, 102 S.Ct. 1388 A proceeding employing a preponderance of the evidence standard has an inherent risk of erroneous fact-finding because "the court possesses unusual discretion to underweigh probative facts that might favor the parent." *Id.* At 762. Implicitly then the clear and convincing standard compels the court to consider *all* of the evidence before it. *See also In re Amber*, 597 A.2d 937, 938 (Me.1991) (recognizing that, pursuant to the rule announced in *Santosky*, 455 U.S. at 759, 102 S.Ct. 1388 trial courts are required to make factual findings in termination proceedings whether or not requested by a party).

[¶ 9] Underlying our procedural requirements guiding adequate fact-finding is the requirement that the trial judge engage in a critical assessment of the evidence presented by the parties. For example, we have held that a mere synopsis of testimony does not fulfill the mandate that a trial

court must generate "findings of fact." *See In re Kenneth H.*, 1997 ME 48, ¶ 3, 690 A.2d 984, 985. We also carefully scrutinize factual findings prepared by one of the parties and adopted verbatim by the court to "insure that the court properly performed its judicial function." *In re Allison H.*, 1999 ME 176, ¶ 7, 740 A.2d 997, 999. While we have long held that a trial judge may "reject the entire testimony of an uncontradicted witness," *In re Andrea W.*, 537 A.2d 596, 598 (Me.1988), a preliminary consideration of the evidence is implicit in the ensuing act of rejection. Particularly, in *In re Fleming*, 431 A.2d 616, 618 (Me.1981) we recognized a fact-finder's "prerogative" to reject testimony; at the same time, we recited the trial court's statement that revealed a dynamic consideration of the relevant evidence *before* it ultimately rejected the testimony. *Id.* Moreover, the trial court gave specific, thoughtful reasons for rejecting the evidence. *Id.*

[¶ 10] Here, the written fact-findings suggest that the trial court did not critically assess any of the mother's probative evidence. The court's order states that the hearing was held on March 9, 2001, March 13, 2001, April 6, 2001, and May 18, 2001. There is no mention of May 29, 2001, the day the mother presented her case. When the court's findings suggest that it may have ignored an entire day of testimony important to the mother's position, at a minimum, the court conveys the impression that it has not considered that evidence.[5]

---

5. This opinion should not be construed to direct the trial court to blindly recite all the testimony from every witness in its factual findings; rather, the court simply must not "overlook or misconceive evidence ... the trial [judge's] findings [should] evince a careful consideration of all of the relevant evidence." *State v. Silvia,* 798 A.2d 419, 426

(R.I.2002); *see also Schlesinger v. Herzog,* 2 F.3d 135, 139 (5th Cir.1993) (recognizing that the trial court was not required to sort through the testimony of "each of two dozen witnesses [because] 'neither punctilious detail' nor slavish tracing of the claims issue by issue and witness by witness" is necessary); *In re Kenneth H.,* 1997 ME 48, ¶¶ 3, 5, 690

[¶ 11] Because the court chose to draft its opinion in a style that listed each and every one of the State's witnesses in the order in which they appeared at trial, but did not list a single witness presented by the mother, we are left with the concern that the testimony of those witnesses may have been, not disbelieved, but overlooked by the court. The missing trial date and the absence of any reference to the witnesses presented on that day leaves us with a significant concern that a portion of the trial was simply not in the court's mind as it undertook the searching analysis necessary to the serious decision before it. This is particularly true given that the hearing was held over a period of several months, trial days were separated by weeks, and 98 days elapsed between the last date of hearing and the date of the court's decision.[6] Ultimately, we cannot feel confident that the mother's and the children's interests were safeguarded by error-reducing procedures in this situation, *see Santosky*, 455 U.S. at 761, 102 S.Ct. 1388 and we must therefore vacate the judgment of the court.

[¶ 12] Because the court will be required on remand to undertake a complete review of the facts presented at trial, we briefly address concerns regarding the accuracy of several of the court's findings. Factual findings will not be set aside unless there is clear error. *In re David G.*, 659 A.2d 859, 861 (Me.1995) (quoting M.R. Civ. P. 52(a)). We have stated:

> An appellate court can reverse a finding of fact only where (1) there is no competent evidence in the record to support it, or (2) it is based on a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

*Pongonis v. Pongonis*, 606 A.2d 1055, 1057–58 (Me.1992) (quoting *Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981)). "We will vacate a judgment terminating parental rights only if the trial court's findings are clearly erroneous." *In re Serena C.*, 650 A.2d 1343, 1344 (Me.1994).

[¶ 13] In this case, the following findings appear to be without record support or are not reflective of the testimony presented: (1) "Dr. Glick recommended that Elaine focus on issues of substance abuse." [7] (2) "Dr. Glick recommended that Elaine's father ... have no contact with the children." [8] (3) "Phyllis Ayoob and Donna Peters, licensed substance abuse counselors, reported that [the mother] failed to follow through with substance abuse treatment and denied sexual abuse by her father." [9] (4) "At DHS's insistence, and with

---

A.2d at 985 (vacating a termination order because "a thirteen-page synopsis of the trial testimony" could not be considered a factual finding). The trial court's findings reflect that it considered the relevant and probative evidence presented by the parties in a termination proceeding.

6. We recognize the difficulties confronting judges, lawyers, and parties in cases where these types of impediments exist.

7. The transcript reveals that Dr. Glick did *not* recommend further substance abuse counseling because Elaine needed to focus on family of origin issues and managing her mental illness.

8. The transcript reveals Dr. Glick advised there be no *"unsupervised* visits" with the maternal grandfather.

9. The mother argues that the court's clearly incorrect finding should not have been used to help establish a conclusion of jeopardy for the "current refusal of services." The transcript reveals Ayoob, who met the mother in 1992, testified that the mother "talked about

great reluctance and foot-dragging, the mother secured a Protection from Harassment Order on behalf of the children against the grandparents, although in her view, such protection was not necessary."[10]

[¶ 14] On remand, the court should carefully review the record on the factual findings addressed herein, as well as the remainder of its findings and independently determine the facts anew. *See In re Scott,* 2001 ME 114, ¶ 35, 775 A.2d 1144, 1155 ("Because it is possible that the court would reach a different conclusion regarding parental fitness on remand, we should not usurp the trial court's role."). Additionally, after this period of time, the trial court should reopen the record to determine whether circumstances have changed, and address the case on an expedited basis due to the "urgency of finality" in this matter. *See id.* At oral argument, there was some question concerning the admission of numerous reports generated by Clough and Damboise during their visits with the mother and her children; the State could not definitively represent whether the trial court had a chance to review these reports before issuing its order. Because the reports were submitted as part of the record to this Court, on remand the trial judge will have full access to the information contained therein.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

being a victim of sexual abuse in the past ... from her father." Also, Ayoob testified that substance abuse treatment commenced, albeit with a different counselor. Peters testified about a meeting in January of 2000; at the first session the mother denied sexual abuse, but during the next session the mother remembered "her father was kneeling by her bed, and that her mother called her—called him ... and nothing happened." Peters stated that substance abuse counseling did not begin because the mother said she had not used substances since 1995, and after conferring with Dr. Glick, they realized there were other issues that "were more important."

**10.** The following exchange occurred with the DHS caseworker about the restraining order:

| [State]: | [A]fter the incident with her father, did [the mother] take any further steps to protect herself and her children from [the grandfather]? |
|---|---|
| [Greenfield]: | Um, yes, after that incident, [the mother] reported that she was going to get a restraining order against her father. |

It does not appear DHS insisted on the restraining order, but rather, that the mother initiated the action. The court's finding in that respect is erroneous.