2005 ME 105

**In re CHELSEA C.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 14, 2005.

Decided: Aug. 31, 2005.

Philip Notis, Esq., South Portland, for appellant.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Atty. Gen., Sally H. DeMartini, Asst. Atty. Gen., Augusta, for appellee.

Angela Crocker, Esq., Portland, Guardian ad Litem.

Thomas J. Greco, Esq., Greco & Marchese, P.A., Portland, for father.

Panel: SAUFLEY, C.J., and DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] The mother of Chelsea C. appeals from a jeopardy order entered in the District Court (Portland, *Beaudoin, J.*) giving custody to Chelsea's father. The mother asserts that: (1) the admission, pursuant to 22 M.R.S.A. § 4005(1)(D) (2004), of a guardian ad litem report violated the hearsay rule and offended due process; (2) the evidence was insufficient to support the court's ruling; and (3) removal was improper because less drastic action was possible. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Chelsea was born October 25, 1999, and immediately taken into protective custody by the Massachusetts Department of Social Services after testing positive for cocaine and opiates. After Chelsea's father was awarded custody in Massachusetts, Chelsea was returned to her parents, who were married at the time. All three then moved to Maine.

[¶ 3] In 2003, a protection from abuse order was entered prohibiting the father from contacting the mother. Chelsea remained in her mother's care. Because of the no contact requirement, the Department of Health and Human Services (DHHS) became involved to facilitate visits by Chelsea with her father.

[¶ 4] After an allegation that Chelsea's father had given her beer during a visit,[1] DHHS referred the family to Youth Alternatives, an organization that conducts assessments and provides rehabilitation services for DHHS. Chelsea's Youth Alternatives's caseworker expressed concerns about supervision and the mother's ability to learn new tasks. Youth Alternatives worked with Chelsea's mother for nine months helping her find affordable housing and transfer services, teaching her how to keep house, offering parental coaching and trying to rid Chelsea of a recurring lice infestation. The investigation was eventually turned back to DHHS because the mother showed little if any improvement.

[¶ 5] In August 2004, DHHS filed a petition for a child protection order pursuant to 22 M.R.S.A. §§ 4032(1)(A), 4035(2) (2004).[2] A guardian ad litem was appointed and conducted an investigation pursuant to 22 M.R.S.A. § 4005 (2004). The guardian ad litem's report indicated contacts with Chelsea, her parents, and nine other individuals, including the guardian ad litem in the parents' divorce action. The guardian ad litem's report included references to statements by the mother's former landlord and Chelsea's pediatrician that were highly critical of the mother's parenting skills and the safety of her care and supervision of Chelsea. Based on the guardian's conclusions that the mother was unable to keep Chelsea safe and that her cognitive limitations and lack of parenting skills placed Chelsea in jeopardy, the re-

---

1. The father claims that he gave Chelsea root beer and she mistakenly told her mother that it was alcoholic beer. That allegation remains unresolved and is not at issue in this case.

2. Title 22 M.R.S.A. § 4032(1)(A) (2004), provides:
   1. Who may petition. Petitions may be brought by:
   A. The department through an authorized agent.
   Title 22 M.R.S.A. § 4035(2) (2004), provides:
   2. Adjudication. After hearing evidence, the court shall make a finding, by a preponderance of the evidence, as to whether the child is in circumstances of jeopardy to the child's health or welfare.

port recommended that Chelsea be placed with her father, with the mother having frequent supervised visits.

[¶ 6] At the jeopardy hearing, the mother objected to the court's admission into evidence and consideration of the guardian ad litem's report. The court admitted the report into evidence pursuant to 22 M.R.S.A. § 4005(1)(D). After the hearing, the court entered a jeopardy order[3] finding jeopardy as to each parent and giving custody to Chelsea's father with services from DHHS. The court found jeopardy as to the father because of infrequent contact and the previous finding of abuse against the mother. Jeopardy as to the mother was based on safety risks from lack of supervision and the chronic lice infestation, that the court found will produce greater

problems as Chelsea ages. This appeal followed.

## II. LEGAL ANALYSIS

### A. Admission of Guardian Ad Litem Report

[¶ 7] The mother objected to the admission into evidence of the guardian ad litem's report, although its admission is authorized by 22 M.R.S.A. § 4005(1)(D).[4] She contends that the report was admitted in error because it contains hearsay, and the court's consideration of the hearsay statements violates her due process rights.

[¶ 8] Hearsay is: "A statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R. Evid. 801(c). Hearsay is

---

3. "Jeopardy" is defined by 22 M.R.S.A. § 4002(6) (2004), as:

> 6. Jeopardy to health or welfare or jeopardy. "Jeopardy to health or welfare" or "jeopardy" means serious abuse or neglect, as evidenced by:
> A. Serious harm or threat of serious harm;
> B. Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm;
> C. Abandonment of the child or absence of any person responsible for the child, which creates a threat of serious harm; or
> D. The end of voluntary placement, when the imminent return of the child to his custodian causes a threat of serious harm.

4. Title 22 M.R.S.A. § 4005 (2004) provides in pertinent part:

> 1. Child; guardian ad litem. The following provisions shall govern guardians ad litem. The term guardian ad litem is inclusive of lay court appointed special advocates under Title 4, chapter 31.
> A. The court, in every child protection proceeding ... shall appoint a guardian ad litem for the child.

> B. The guardian ad litem shall act in pursuit of the best interests of the child. The guardian ad litem must be given access to all reports and records relevant to the case and investigate to ascertain the facts. The investigation must include, when possible and appropriate, the following:
> 1) Review of relevant mental health records and materials;
> 2) Review of relevant medical records;
> 3) Review of relevant school records and other pertinent materials;
> 4) Interviews with the child with or without other persons present; and
> 5) Interviews with parents, foster parents, teachers, caseworkers and other persons who have been involved in caring for or treating the child.
> ....
> D. The guardian ad litem shall make a written report of the investigation, findings and recommendations and shall provide a copy of the report to each of the parties reasonably in advance of the hearing and to the court, except that the guardian ad litem need not provide a written report prior to a hearing on a preliminary protection order. The court may admit the written report into evidence.

generally inadmissible "except as provided by law or by these rules. The words 'as provided by law' include applicable state and federal statutes." M.R. Evid. 802.

[¶ 9] Section 4005(1)(D) was amended in 2002 to give the court discretion to admit a guardian ad litem's report into evidence. P.L.2001, ch. 696 § 12. Section 4005 requires a court-appointed guardian ad litem to "act in pursuit of the best interests of the child," and "investigate to ascertain the facts." 22 M.R.S.A. § 4005(1)(B). The statute mandates that the guardian have access to otherwise confidential records and conduct interviews with several sources, including anyone "who ha[s] been involved in caring for or treating the child." 22 M.R.S.A. § 4005(1)(B)(5). The guardian must then compile a report of his or her investigation and make conclusions and recommendations. 22 M.R.S.A. § 4005(1)(D).

■ [¶ 10] We have addressed similar hearsay and due process issues in opinions approving the admission of statutorily authorized guardian ad litem or DHHS reports in divorce proceedings. *Richards v. Bruce,* 1997 ME 61, ¶ 10, 691 A.2d 1223, 1226; *Ziehm v. Ziehm,* 433 A.2d 725, 727–29 (Me.1981). Thus, there is no question that the Legislature may authorize court consideration of the contents of guardian ad litem reports as an exception to the hearsay rule. The real issue is whether the court's consideration of the information in these reports violates due process rights. *Ziehm,* 433 A.2d at 729.

[¶ 11] The mother cites the holding of *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), that parents must be afforded the utmost in procedural protection when the state deprives them of their parental rights, to support her contention that admitting the report of the guardian ad litem violated procedural due process.

■ [¶ 12] Three factors must be balanced to determine whether a particular procedure comports with due process.

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see Balian v. Board of Licensure in Medicine,* 1999 ME 8, ¶ 10, 722 A.2d 364, 367.

[¶ 13] In *In re Charles Jason R. Jr.,* 572 A.2d 1080, 1081–82 (Me.1990), we applied these three factors to uphold 22 M.R.S.A. § 4007(2) (2004), that permits the court to consider a child's out-of-court statements to the extent of their probative value. There, we read *Santosky* to mean that the revocability of a jeopardy order reduces potential harm to important parental rights. *Charles Jason R. Jr.,* 572 A.2d at 1081. We noted that the risk of error was low since the statute only allowed hearsay to the extent that it is probative. *Id.* Though section 4005(1)(D) does not contain a similar provision, it does give the court discretion to admit a given report or not.

[¶ 14] The law provides other safeguards to reduce the risk of untrustworthy information affecting the court's decision. First, the guardian ad litem is a disinterested party and an agent of the court. 22 M.R.S.A. § 4005(1)(G). The guardian ad litem must meet court established qualification requirements in order to serve, 22 M.R.S.A. § 4005(1)(A), and therefore possesses competence and experience to make reasoned judgments about the reliability of

information. Second, the guardian ad litem is statutorily required to provide copies of the report and the names of sources to all parties in advance of trial. 22 M.R.S.A. § 4005(1)(D). Further, nothing precluded the mother from calling a declarant to testify, or producing a witness of her own to rebut the challenged statements.

[¶ 15] The mother argues that if the report is deemed admissible, statements from parties not called to testify should be redacted. To do so, however, would negate the purpose of a guardian ad litem, which is to conduct an investigation, recommend what action is in the best interests of the child, and outline the reasons for those conclusions. *See generally* 22 M.R.S.A. § 4005. As demonstrated by the Legislature's insistence that the guardian ad litem have access to varied documents and persons, the value in the guardian ad litem's report is in both its foundation and its conclusions. *See id.*

■ [¶ 16] Applied to hearing processes where significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder. *In re Kristy Y.*, 2000 ME 98, ¶ 7, 752 A.2d 166, 169. The jeopardy hearing provided each of these essentials of due process. The trial court's reliance on statements in the guardian ad litem's report, prepared and offered subject to these protections to support its reliability, did not violate the mother's due process rights. *Ziehm*, 433 A.2d at 729.

### B. Sufficiency of the Evidence

■ [¶ 17] The mother challenges the sufficiency of the evidence to support a jeopardy determination, specifically arguing that DHHS failed to show that Chelsea either was seriously harmed, or may be seriously harmed. "Serious harm" is defined as a "serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior[.]" 22 M.R.S.A. § 4002(10)(B) (2004).

[¶ 18] To overturn a finding of jeopardy, we must determine that the court's conclusion was clearly erroneous. M.R. Civ. P. 52(a); *In re Heather G.*, 2002 ME 151, ¶ 12, 805 A.2d 249, 252.

[¶ 19] The record includes evidence that Chelsea was seen unsupervised in dangerous places, that the mother did not properly clothe and feed Chelsea, and that the mother required repetitive interactive instruction over a long period of time to learn new skills. The psychotherapist, who testified at trial, found that a lack of supervision, discipline and developmental support would likely produce a child with serious behavioral and relationship problems who would suffer from depression or anxiety. Sufficient evidence in the record supports the court's jeopardy finding.

### C. Removal

■ [¶ 20] The mother argues that the court should not have removed Chelsea from her care, but rather, should have ordered more in-home support. Once the court has determined that a child is in jeopardy, it has a wide range of choices to determine a course of action within the purpose and priorities of 22 M.R.S.A. §§ 4035(3), 4036 (2004).[5] Competent evi-

---

5. Title 22 M.R.S.A § 4035(3) (2004) provides in pertinent part:

dence in the record, including the supervision concerns and the mother's inability to rectify those concerns due to learning delays, supports the court's jeopardy finding. The court therefore properly exercised its discretion to order placement of the child with the father.

The entry is:

Judgment affirmed.

3. Grounds for Disposition. If the court determines that the child is in circumstances of jeopardy to the child's health or welfare, the court shall hear any relevant evidence regarding proposed dispositions, including written or oral reports, recommendations or case plans. The court shall then make a written order of any disposition under section 4036.

22 M.R.S.A. § 4036 (2004) provides in pertinent part:

1. Disposition. In a protection order, the court may order one or more of the following:

A. No change in custody;

B. Departmental supervision of the child and family in the child's home;

C. That the child, the custodians, the parents and other appropriate family members accept treatment or services to ameliorate the circumstances related to the jeopardy;

. . . .

F. Removal of the child from his custodian and granting custody to a noncustodial parent, other person or the department;

. . . .

2. Principles. In determining the disposition, the court shall apply the following principles in this priority:

A. Protect the child from jeopardy to his health or welfare;

B. Give custody to a parent if appropriate conditions can be applied;

C. Make disposition in the best interests of the child; and

D. Terminate department custody at the earliest possible time.