2008 ME 50

**GENUJO LOK BETEILIGUNGS GMBH**

v.

**Manfred ZORN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 24, 2008.

Decided: March 18, 2008.

David B. McConnell, Esq., Stephanie A. Williams, Esq., Perkins Thompson, P.A., Portland, ME, for Manfred Zorn.

Bruce W. Hepler, Esq., Law Offices of Bruce W. Hepler, Portland, ME, for Genujo Lok Beteiligungs GmbH.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Manfred Zorn appeals from a judgment entered in Superior Court (Cumberland County, *Warren, J.*) denying his motion for an evidentiary hearing and holding that a German judgment entered against him is entitled to recognition and enforcement in Maine, pursuant to the Uniform Foreign Money-judgments Recognition Act, 14 M.R.S. §§ 8501–8509 (2007) (Recognition Act), and the Uniform Enforcement of Foreign Judgments Act, 14 M.R.S. §§ 8001–8008 (2007) (Enforcement Act). We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Zorn worked in Germany as a freelance broker on the Frankfurt Securities Exchange. His work included settling security transactions through Lombardkasse AG, a German company that is now known as GENUJO LOK Beteiligungs GmbH. When Zorn was engaged in business with Lombardkasse, his sole domicile was Maine.

[¶ 3] In the course of his transactions with Lombardkasse, Zorn incurred a debt of 2.4 million deutsche marks (DM) to the company. On May 18, 1998, Zorn executed and delivered to Lombardkasse a German notarized recognition of debt, also known as an enforceable deed, which is similar to a settlement agreement in Maine. In the recognition of debt, the parties agreed that Zorn would pay Lombardkasse 1.6 DM, according to an agreed repayment plan, as settlement for Lombardkasse's claim. The agreement included the following relevant conditions: (1) the acknowledgement of indebtedness shall itself provide the basis for Zorn's liability; (2) with respect to the payment of a partial amount of the overall debt in the amount of 1.6 DM, Zorn is liable to the immediate compulsory attachment of his entire assets; (3) Zorn expressly waives the right to all forms of appeal concerning the basis or the amount of the debt; (4) if Zorn fails to comply with the repayment plan, he must pay back the remaining amount of the original 2.4 DM debt; (5) all claims arising in connection with or as a result of the agreement or claims relating to its validity are subject to German law; and (6) the place of jurisdiction for all disputes arising in connection with or as a result of the agreement or disputes relating to its termination or validity shall be Frankfurt am Main, Germany. Zorn had no significant assets in Germany when the parties entered into the recognition of debt.

[¶ 4] Zorn repaid 358,576.46 DM but failed to comply with the remainder of the repayment plan, leaving 2,041,423.54 DM unpaid. Because Zorn agreed in the recognition of debt to compulsory attachment of his assets, the recognition of debt was automatically enforceable in Germany.[1]

---

1. Pursuant to German law, a recognition of debt is immediately enforceable if it has been drawn up by a court or a notary public and contains a clause in which the debtor subjects himself to immediate judicial enforcement. Zivilprozeordnung [ZPO] [Code of Civil Pro-

Zorn's only assets were in the United States. Therefore, Lombardkasse instituted court proceedings in Frankfurt am Main, Germany to obtain a judgment, which it could then seek to enforce in the United States.

[¶ 5] Lombardkasse served Zorn in the United States on August 19, 2003. Zorn appeared before the Frankfurt am Main Regional Court, through his German attorney, and raised a number of jurisdictional and substantive arguments, including (1) the Frankfurt am Main Regional Court lacked jurisdiction; (2) Zorn was disadvantaged during the notarization of the deed because he was not represented by an attorney; (3) the recognition of debt was meant to apply in the event of Zorn's success in another lawsuit and thus did not create any new grounds for indebtedness; and (4) Lombardkasse had no legitimate interest in taking legal action. The Frankfurt am Main Regional Court rejected Zorn's arguments [2] and issued a judgment on May 10, 2004, ordering Zorn to satisfy the debt, plus interest, and to pay the costs of the lawsuit.[3] Landgericht [LG] [Trial Court] May 10, 2004 (F.R.G.). The court issued the judgment to GENUJO LOK Beteiligungs GmbH, as Lombardkasse's successor, for the purpose of judicial enforcement.

[¶ 6] Zorn appealed that decision to the Frankfurt am Main Higher Regional Court, which affirmed the judgment on May 25, 2005. Oberlandesgericht [OLG] [Court of Appeals] May 25, 2005 (F.R.G.). The Frankfurt am Main Regional Court then issued two orders, on June 15, 2005 and July 29, 2005, fixing the costs that Zorn was obligated to pay pursuant to its May 10, 2004 decision and the appellate court's decision of May 25, 2005, affirming that decision. Landgericht [LG] [Trial Court] June 15, 2005 (F.R.G.); Landgericht [LG] [Trial Court] July 29, 2005 (F.R.G.).

[¶ 7] On March 17, 2006, Lombardkasse filed the four German decisions with the clerk of the Cumberland County Superior Court, pursuant to the Enforcement

---

cedure] § 794.1 No. 5; Burgerliches Gesetzbuch [BGB] [Civil Code] § 781.

2. The Frankfurt am Main Regional Court found that, contrary to Zorn's contentions: (1) it had jurisdiction over the parties and their legal dispute; (2) Zorn was not disadvantaged during the notarization because an attorney represented and advised him before he signed the recognition of debt; (3) the argument that Zorn did not intend to create any new independent obligation lacked any foundation and was clearly contradicted by the actual wording of the recognition of debt; and (4) Lombardkasse had a legitimate interest in taking legal action because, although the notarized recognition of debt was automatically enforceable pursuant to German law, there were serious doubts as to whether, without entry of a judgment on the debt in Germany, Lombardkasse could similarly enforce the agreement in the United States pursuant to Maine law. Landgericht [LG] [Trial Court] May 10, 2004 (F.R.G.).

3. The Frankfurt am Main Regional Court's ruling specifically provides:

1. The Defendant[, Zorn,] is ordered to pay to the Plaintiff[, Lombardkasse,] 1,043,763.28 Euros plus 10% interest on 204,516.75 Euros from September 3, 1999 to August 19, 2003, 10% interest on a further 204,516.75 Euros from July 3, 2000 to August 19, 2003, 10% interest on a further 204,516.75 Euros from July 3, 2001 to August 19, 2003, 10% interest on a further 204,516.75 Euros from July 3, 2002 to August 19, 2003, 5% interest points above the base rate on 1,043,763.28 Euros since August 19, 2003. In all other respects the action is dismissed.

2. The Defendant shall bear the costs of the case.

3. The judgment is provisionally enforceable against payment of a security of 110% of the amount to be enforced.

Landgericht [LG] [Trial Court] May 10, 2004 (F.R.G.).

Act, 14 M.R.S. §§ 8001–8008, and authenticated in accordance with M.R. Civ. P. 44(a)(2). Zorn filed a motion raising grounds for nonrecognition of the German judgments and requesting an evidentiary hearing on this issue. The court denied Zorn's request for a hearing, after considering his substantive arguments against recognition and determining that Zorn did not raise any issues that could not be resolved in the absence of an evidentiary hearing. The court held that GENUJO LOK was entitled to commence enforcement proceedings in Maine.

[¶ 8] Zorn filed a timely notice of appeal.

## II. LEGAL ANALYSIS

[¶ 9] The Enforcement Act creates an expedited procedure for enforcing federal and state judgments that are entitled to full faith and credit in Maine. 14 M.R.S. § 8002. Any such judgment that is properly authenticated and filed with the clerk of the court "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of [a court] of this State and may be enforced or satisfied in like manner." 14 M.R.S. § 8003.

[¶ 10] In contrast, the Recognition Act applies to judgments entered in foreign countries. Unless one of the statutory grounds for nonrecognition applies, a foreign country judgment that is "final, conclusive and enforceable where rendered," 14 M.R.S. § 8503, is considered conclusive between the parties to the extent that it grants or denies recovery of a sum of money and "is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit." 14 M.R.S. § 8504. Section 8505, entitled "Grounds for nonrecognition," lists three grounds upon which "[a] foreign judgment is not conclusive," [4] 14 M.R.S. § 8505(1), and seven grounds upon which "[a] foreign judgment need not be recognized," [5] 14 M.R.S. § 8505(2).

### A. Meaning of "foreign judgment"

■ [¶ 11] Zorn argues that the court erred in recognizing the German judgments because the recognition of debt is not a "foreign judgment" within the meaning of the Recognition Act, 14 M.R.S. § 8502(2), 8503. Zorn's argument is misplaced. The issue is not whether the recognition of debt itself qualifies as a "foreign judgment," but whether the four German decisions, enforcing the recogni-

4. A foreign judgment is not conclusive if:

   A. The judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
   B. The foreign court did not have personal jurisdiction over the defendant; or
   C. The foreign court did not have jurisdiction over the subject matter.
   14 M.R.S. § 8505(1).

5. A foreign judgment need not be recognized if:

   A. The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable the defendant to defend;
   B. The judgment was obtained by fraud;
   C. The cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this State;
   D. The judgment conflicts with another final and conclusive judgment;
   E. The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;
   F. In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or
   G. The foreign court rendering the judgment would not recognize a comparable judgment of this State.
   14 M.R.S. § 8505(2).

tion of debt, are "foreign judgments" and therefore entitled to recognition.

■ [¶ 12] The Recognition Act applies to "foreign judgments," 14 M.R.S. § 8503, which it defines as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty or a judgment for support in matrimonial or family matters." 14 M.R.S. § 8502(2). We review the interpretation of a statute de novo. *State v. Diecidue*, 2007 ME 137, ¶ 10, 931 A.2d 1077, 1080; *Alexandre v. State*, 2007 ME 106, ¶ 14, 927 A.2d 1155, 1159. When language is unambiguous, we give it its plain meaning. *See Kapler v. Kapler*, 2000 ME 131, ¶ 17, 755 A.2d 502, 508.

[¶ 13] In this case, the May 10, 2004 decision of the Frankfurt am Main Regional Court falls within the plain meaning of a "foreign judgment" as it is defined in 14 M.R.S. § 8502(2). The May 10, 2004 decision is titled "Judgement [sic];" was issued by a foreign court and bears the seal of that court; grants recovery of a sum of money; and is not "a judgment for taxes, a fine or other penalty or a judgment for support in matrimonial or family matters." 14 M.R.S. § 8502(2). Therefore, the court did not err in concluding that the May 10, 2004 judgment qualifies as a foreign judgment within the meaning of the Maine Recognition Act, 14 M.R.S. § 8502(2).[6]

**B. Whether German decisions are entitled to recognition**

[¶ 14] Zorn raised three grounds for nonrecognition: (1) "[t]he judgment was rendered under a system that does not provide ... procedures compatible with the requirements of due process of law," 14 M.R.S. § 8505(1)(A); (2) "[t]he foreign court did not have personal jurisdiction over the defendant," 14 M.R.S. § 8505(1)(B); and (3) "[t]he foreign court rendering the judgment would not recognize a comparable judgment of this State," 14 M.R.S. § 8505(2)(G).

[¶ 15] While each of these issues involve factual questions, or mixed questions of fact and law, on this record Zorn has not established that there is any material fact that he can dispute regarding the grounds for nonrecognition that he asserts. We proceed to address those three grounds.

**1. Due Process**

■ [¶ 16] Zorn argues that the court erred in recognizing the German judgments because the German proceedings did not comport with the requirements of due process of law. Pursuant to 14 M.R.S. § 8505(1)(A), a foreign judgment is not conclusive if "[t]he judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law." In interpreting language identical to that found in the Recognition Act, courts have consistently read this section to require a determination of whether the foreign *system* that rendered the decision comports with due process, rather than

---

6. Although the court did not address whether the remaining three German decisions that GENUJO LOK filed with the court qualify as "foreign judgments," there is no reason to conclude that they do not. The June 1, 2005 decision of the Frankfurt am Main Higher Regional Court simply affirms the May 10, 2004 decision. The Frankfurt am Main Regional Court's June 15, 2005 and July 29, 2005 decisions fixed the costs that Zorn was ordered to pay by virtue of its May 10, 2004 decision and the Frankfurt am Main Higher Regional Court's decision upholding that May 10, 2004 decision. With the exception that they are not also titled "Judgement [sic]," the three other decisions qualify as foreign judgments for the same reasons the May 10, 2004 decision does.

"whether the particular judgments [being challenged] were issued in proceedings that conform to the requirements of due process of law." *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476–77 (7th Cir.2000); *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 762 N.Y.S.2d 5, 792 N.E.2d 155, 160 (2003) (reasoning the statute is satisfied if the foreign court's procedures are "compatible with the requirements of due process of law").

[¶ 17]  In this case, the German judgments were rendered by a court system that provides procedures compatible with due process. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir.1994) ("Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process."); *see also Dresdner Bank AG v. Haque*, 161 F.Supp.2d 259, 263 (S.D.N.Y.2001).

■■■ [¶ 18]  Furthermore, it does not appear from the record that, in this particular case, the German judgments were issued in proceedings that lacked due process. We have identified a number of factors to consider in determining whether a particular proceeding satisfies due process. When significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder. *In re Chelsea C.*, 2005 ME 105, ¶ 16, 884 A.2d 97, 102 (citing *In re Kristy Y.*, 2000 ME 98, ¶ 7, 752 A.2d 166, 169).

[¶ 19]  Here, Zorn received notice of Lombardkasse's German complaint when he was served with process in Maine and was given an opportunity to respond. He appeared in the German court, through his attorney, and raised a number of substantive and jurisdictional issues as to why the German court should not recognize the recognition of debt. The record suggests he was permitted to submit evidence and provides no reason to suspect that the German fact-finder was not impartial. Therefore, Zorn's due process argument is not persuasive.

2.  Personal Jurisdiction

[¶ 20]  Zorn argues that the court erred in recognizing the German decisions because the German courts did not have authority to exercise personal jurisdiction over him. One of the mandatory grounds for denying recognition of a foreign judgment is that "[t]he foreign court did not have personal jurisdiction over the defendant." 14 M.R.S. § 8505(1)(B). The Recognition Act provides six bases for personal jurisdiction that, if found, conclusively establish that the foreign court had authority to exercise personal jurisdiction over the defendant. 14 M.R.S. § 8506(1).[7]

---

7.  Title 14 M.R.S. § 8506(1) provides:
    **1. Foreign judgment not refused recognition for lack of personal jurisdiction.**
    The foreign judgment may not be refused recognition for lack of personal jurisdiction if:
    **A.**  The defendant was served personally in the foreign state;
    **B.**  The defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over the defendant;

    **C.**  The defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;
    **D.**  The defendant was domiciled in the foreign state when the proceedings were instituted or, being a body corporate, had its principal place of business, was incorporated or had otherwise acquired corporate status in the foreign state;
    **E.**  The defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action or

The Recognition Act also provides that these six bases for personal jurisdiction are not exclusive and that "courts of this State may recognize other bases of jurisdiction." 14 M.R.S. § 8506(2).

■ [¶ 21] Zorn's personal jurisdiction argument fails for three reasons. First, the court properly concluded that Zorn "voluntarily appeared in the proceedings, other than for the purpose of . . . contesting the jurisdiction of the court over the defendant," within the meaning of 14 M.R.S. § 8506(1)(B). Zorn appeared, through his counsel, and raised not only jurisdictional grounds but also substantive grounds for dismissing the action.

■ [¶ 22] Second, the court properly concluded that Zorn "prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved," within the meaning of 14 M.R.S. § 8505(1)(C). In the notarized recognition of debt, the parties agreed that the place of jurisdiction for all disputes arising in connection with or as a result of their agreement would be Frankfurt am Main. This forum selection clause would be meaningless unless it provides courts in Frankfurt am Main with authority to exercise personal jurisdiction over the parties. Therefore, the court properly concluded that Zorn impliedly agreed to be subject to the jurisdiction of the German courts. *See Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (noting "parties to a contract may agree in advance to submit to the jurisdiction of a given court"); *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 527 (1st Cir.1985) (holding that a party who agreed

to Maine as the forum for arbitration impliedly consented to personal jurisdiction in Maine courts).

■ [¶ 23] Third, section 8506(2) of the Recognition Act permits a court to recognize a foreign country judgment based on any jurisdictional basis that would be recognized under the forum's internal law, including the forum's long-arm statute. *See, e.g., CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.,* 296 A.D.2d 81, 743 N.Y.S.2d 408, 420 (N.Y.App.Div.2002) (holding that the "question is not whether the foreign court properly exercised jurisdiction under its own laws" but whether personal jurisdiction was present "as understood in our jurisprudence"). Here, there is no question that Maine's long-arm statute would authorize a court to exercise personal jurisdiction over a foreign individual who incurs a substantial amount of debt from doing business in Maine with a Maine corporation. *See* 14 M.R.S. § 704–A(2)(A) (2007) (providing that a person submits himself to personal jurisdiction in Maine by transacting any business within the State); *see also Interstate Food Processing Corp. v. Pellerito Foods, Inc.,* 622 A.2d 1189, 1192 (Me.1993) (holding long-arm statute authorizes personal jurisdiction over a foreign defendant who has established a continuing business relationship with a resident of Maine). Therefore, the court did not err in determining that the German courts had authority to exercise personal jurisdiction over Zorn and properly rejected Zorn's arguments to the contrary.

### 3. Reciprocity

■ [¶ 24] Zorn argues the court erred in recognizing the German judg-

---

claim for relief arising out of business done by the defendant through that office in the foreign state; or

**F.** The defendant operated a motor vehicle or airplane in the foreign state and the

proceedings involved a cause of action or claim for relief arising out of that operation.

ments because Germany would not recognize a comparable judgment from Maine. Maine is one of the few states that have adopted a nonuniform amendment to the Recognition Act regarding reciprocity. In Maine, a "foreign country judgment need not be recognized" if the foreign country "would not recognize a comparable judgment of this State." 14 M.R.S. § 8505(2). Reciprocity is, therefore, not mandatory. In contrast, Germany requires that the rendering court grant reciprocity to German judgments as a mandatory condition of recognizing a foreign country money judgment. Zivilprozessordnung [ZPO] [Code of Civil Procedure] § 328. Today, German courts read this requirement broadly and have assumed reciprocity even though the rendering state has not yet recognized a comparable German judgment or provided a guarantee that it intends to recognize German judgments in return. *See* Wolfgang Wurmnest, *Recognition and Enforcement of U.S. Money Judgments in Germany*, 23 BERKELEY J. INT'L LAW 175, 187 (2005); Dennis Campbell and Dharmendra Popat, *Enforcing American Money Judgments in the United Kingdom and Germany*, 18 S. ILL. U. L.J. 517, 546–47 (1994). German courts will recognize a foreign settlement or recognition of debt so long as it has been subjected to court approval. Wurmnest at 183. Therefore, German courts would likely recognize a comparable judgment from Maine, and the Superior Court did not err in rejecting Zorn's argument to the contrary.

## C. Evidentiary Hearing

[¶ 25] Zorn argues that the court erred in reaching its decision without holding an evidentiary hearing. Whether the Recognition and Enforcement Acts entitle a party opposing recognition to any procedural opportunities in which to raise grounds for nonrecognition of a foreign country judgment is an issue of first impression for this Court. It is a matter of statutory interpretation that we review de novo. *See Diecidue*, 2007 ME 137, ¶ 10, 931 A.2d at 1080. The main objective in statutory interpretation is to give effect to the Legislature's intent. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If a statute is silent or ambiguous, we look to the legislative history and other extraneous aids to assist us in interpreting the statute's meaning. *See Foley v. Verizon*, 2007 ME 128, ¶ 10, 931 A.2d 1058, 1061.

[¶ 26] We agree with those courts that have distinguished between the issues of recognition and enforcement of foreign country judgments. *See, e.g., Guinness PLC v. Ward*, 955 F.2d 875, 889 (4th Cir. 1992) (holding that questions of whether a foreign country judgment should be recognized pursuant to the Recognition Act "are distinct and separate inquiries from those concerning whether such a judgment once recognized is entitled to enforcement"); *Pinilla v. Harza Eng'g Co.*, 324 Ill.App.3d 803, 257 Ill.Dec. 921, 755 N.E.2d 23, 26 (2001) (holding that the Recognition Act only provides the means to recognize, not the procedure to file or enforce foreign judgment). Before a foreign country judgment can be enforced, it must be recognized. *See* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE U.S. § 481, cmt. b (1987) (providing in comment b, titled "[r]ecognition and enforcement distinguished[,]" "The judgment of a foreign state may not be enforced unless it is entitled to recognition.").

[¶ 27] The Recognition Act does not expressly require an evidentiary hearing on the issue of recognition. However, because the Recognition Act lists grounds for nonrecognition, it implies that a judgment debtor, or other party with standing, should have some opportunity to argue

that one or more of those grounds applies. Similarly, due process requires that such a party receive notice and an opportunity to be heard on the issue of recognition. *See Chelsea C.*, 2005 ME 105, ¶ 16, 884 A.2d at 102. That opportunity to raise grounds for nonrecognition and to be heard on the issue, however, can be exercised by filing a motion contesting recognition, as Zorn did here. Therefore, the court did not err in concluding that neither the Recognition Act nor the requirements of due process demanded an evidentiary hearing.

[¶ 28] Once Zorn filed his motion, whether to hold an evidentiary hearing on the issues he raised was within the discretion of the trial court. *See* M.R. Civ. P. 7(b)(7). In this case, Zorn did not raise any issues that necessitated an evidentiary hearing. Therefore, the court acted within the bounds of its discretion in ruling on the issue of nonrecognition without holding an evidentiary hearing. *See* M.R. Civ. P. 7(b)(7); *see also Guardianship of K–M*, 2005 ME 8, ¶ 37, 866 A.2d 106, 117 (holding an evidentiary hearing is not required when the documentary information is adequate).

The entry is:

Judgment affirmed.