MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions

Decision:      2014 ME 36
Docket:        Han-13-187
Submitted
 On briefs:    December 13, 2013
Decided:       March 4, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>LEVY</u>, and MEAD, JJ.

## ADOPTION OF T.D.

LEVY, J.

[¶1]  The temporary guardians of Tobias D. ("guardians") appeal from a judgment entered in the Hancock County Probate Court (*Patterson, J.*) denying their petition to terminate the parental rights of the child's biological father.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Much of the factual background of this case is set out in our decision in *Adoption of Tobias D.*, 2012 ME 45, ¶¶ 2-8, 40 A.3d 990.  The child's mother, who lives in Indiana, was sexually active with multiple men, including R.M, at the time of the child's conception.  At some point during the pregnancy, the mother informed R.M. that he might be the father and that she planned to have an abortion.  Unbeknownst to R.M., the mother had instead arranged for a family friend and her husband to adopt the child.  The child was born in September 2009.

2

[¶3]   In November 2009, with the mother's consent, the couple filed petitions for temporary guardianship, guardianship, and adoption of the child in the Hancock County Probate Court.  In support of their petitions, the mother filed four separate affidavits stating that the father is "unknown."  On December 22, 2009, the court appointed the couple to be the child's limited temporary guardians.

[¶4]  Notwithstanding her previous representations to the court, the mother had apparently concluded, based solely on the child's appearance at birth, that R.M. was the biological father.  In January 2010, four months after the child was born, the mother informed R.M. that she had given birth to the child and that he was the father.  On January 11, 2010, the guardians filed a letter with the Probate Court stating, "[W]e now know that the biological father of [the child] is [R.M.]"  On January 28, 2010, R.M., who was living in Indiana, filed a request for a change of guardianship and an objection to the adoption petition; on the same date, the guardians filed a petition for termination of his parental rights.  On February 26, 2010, R.M. filed a voluntary acknowledgement of paternity.

[¶5]  On March 23, 2011, following a hearing on R.M.'s petition to establish parental rights and the guardians' petition to terminate R.M.'s parental rights, the court issued a judgment finding that "for purposes of these proceedings, [R.M.] shall be considered to be [the child's] biological father."  The judgment, however, did not make a definitive finding regarding R.M.'s paternity.  The court denied

R.M.'s petition to establish parental rights, concluding that R.M. had failed to meet his burden of proving that he is able to take responsibility for the child within a time reasonably calculated to meet the child's needs and to establish that a declaration of his parental rights would be in the child's best interest. The court granted the guardians' petition to terminate R.M.'s parental rights pursuant to 18-A M.R.S. § 9-204 (2013) on the same grounds.

[¶6] R.M. appealed, and we vacated the Probate Court's judgment. *Adoption of Tobias D.*, 2012 ME 45, ¶¶ 1, 25, 40 A.3d 990. Because of the continuing uncertainty regarding the child's parentage, we remanded the case for a DNA test to establish whether R.M. is in fact the child's biological father and instructed the court that, if he is, then the court must reconsider the guardians' and the father's respective petitions as well as the need for a guardianship. *Id.* ¶¶ 25-26. We further held that, as a matter of law, the court's consideration of the father's poor financial circumstances and lack of maturity was, without more, an insufficient ground for finding parental unfitness:

> Socioeconomic status or a finding that a parent is less financially stable than potential guardians is not the type of finding that renders a parent unfit as a matter of law unless it is also determined that he is unable or unwilling to ensure that the child's basic needs are met. A parent's fitness is usually called into question due to a serious issue that bears directly on his or her ability to adequately parent the child, such as physical abuse or neglect; sexual abuse; substance abuse; emotional abuse and significant mental health problems; a proven inability to care for a child with special needs; or a history of domestic

4

> violence. Finances should not form the foundation of a court's fitness determination, and the court's reliance on them here was error.

*Id.* ¶ 22 (citations omitted).

[¶7] On remand, genetic testing confirmed that R.M. is the child's biological father. The Probate Court held a four-day hearing during which it heard testimony from R.M., the guardians, and the child's guardian ad litem (GAL), among other witnesses. On March 14, 2013, the court entered a judgment concluding that the guardians had not met their burden of proving, by clear and convincing evidence, that the father was unfit to parent the child. The court denied their petition for termination of the father's parental rights and ordered the transition of the child to the father's custody in Indiana following a transitional period.

[¶8] On April 4, 2013, the guardians filed a notice of appeal, a motion to stay the judgment, and a motion challenging the GAL's investigations. On April 11, 2013, the Probate Court entered an order setting out further details regarding the transition plan, including the requirement that the father submit negative test results for drugs and alcohol. The court denied the guardians' motion to stay the judgment and deferred a ruling on their motion concerning the GAL. In an order dated April 23, 2013, the court directed that the guardians' motion concerning the GAL be transferred to the Chief Judge of the District Court.

[¶9]  On May 6 and 16, 2013, in response to the guardians' renewed motion requesting a stay of the Probate Court's transition order, we suspended M.R. App. P. 3(b) to allow the Probate Court to "enforce or modify the transition order to the extent that it finds necessary to protect the child from jeopardy," but directed the court not to stay the transition, which "must proceed as quickly as possible consistent with the protection of the child from jeopardy."  The Probate Court issued a temporary stay, and ordered the father to submit an additional drug test. On September 16, 2013, in response to a motion by the father requesting an order directing law enforcement to assist him in retrieving the child, we again suspended M.R. App. P. 3(b) "to the extent necessary to permit any trial court to issue any order it determines is appropriate to ensure that a person legally entitled to physical custody of [the child] is given that custody."  Subsequently, each party filed a motion alleging that the other party had created a situation of jeopardy for the child.  The Probate Court held hearings in September and October of 2013, and found that neither side had met the burden of proof for establishing jeopardy.

[¶10]  On October 8, 2013, the Probate Court ordered that the child be moved to Indiana once the father verified his negative drug test.  The father submitted the required verification, and on or about October 23, 2013, the child was moved to Indiana.

6

## II. DISCUSSION

[¶11]   The guardians contend that the court erred by (A) concluding that they had not met their burden of proving that the father was unfit to parent the child, (B) relying upon the GAL's report and testimony and declining to rule on their motion challenging the GAL's investigation, and (C) failing to include a non-compliance provision in the child's transition plan.  We consider each contention in turn.

### A.   Parental Fitness

[¶12]   The guardians contend that the court erred in finding that they failed to prove, by clear and convincing evidence, that the father had abandoned the child or that the father was unwilling or unable to take responsibility for the child within a timeframe reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii)-(iii) (2013).  "If the trial court finds that a party with the burden of proof fails to meet that burden, we review the entire record to ascertain whether the record compels a finding contrary to that made by the trial court." *Baillargeon v. Estate of Daigle*, 2010 ME 127, ¶ 20, 8 A.3d 709.

[¶13]   With regards to the guardians' contention that the father abandoned the child, the statute defines "[a]bandonment" as "any conduct on the part of the parent showing an intent to forego parental duties or relinquish parental claims," including failure to communicate meaningfully or maintain regular visitation with

the child for a period of at least six months. 22 M.R.S. § 4002(1-A) (2013). Although, as the guardians' assert, the father did not avail himself of every available opportunity to develop a relationship with the child, evidence in the record also demonstrated that the circumstances of the case, including the father's incarceration and the period of time while the father's appeal was pending following the court's order terminating his parental rights, intervened to make contact with the child difficult. *See Adoption of Lily T.*, 2010 ME 58, ¶ 21, 997 A.2d 722 (noting that a parent's long-term incarceration "should not, standing alone, constitute abandonment" and focusing the analysis on whether, notwithstanding the separation, the parent makes "an even greater effort to foster a nurturing relationship with the child using the means available" (quotation marks omitted)). Given the additional evidence regarding the father's efforts to maintain contact with the child through Skype and during his visits to Maine, his perseverance in seeking to establish his parental rights in this highly contested proceeding, and his preparation for the child's move to Indiana, competent evidence in the record supports the court's finding that the father did not abandon the child.

[¶14] Similarly, the evidence in the record did not compel the court to find that the father was unwilling or unable to take responsibility for the child within a timeframe reasonably calculated to meet the child's needs. *See* 22 M.R.S.

8

§ 4055(1)(B)(2)(b)(ii); *see also Baillargeon*, 2010 ME 127, ¶ 20, 8 A.3d 709. Competent evidence demonstrated that the father has taken steps to learn how to care for the child and address his needs. As we previously stated, the father's socioeconomic status, by itself, is insufficient as a matter of law to support a finding of parental unfitness unless it is also demonstrated that the father is unable or unwilling to take care of the child's basic needs. *Adoption of Tobias D.*, 2012 ME 45, ¶ 22, 40 A.3d 990. The court did not err in finding that the guardians did not meet their burden of proving, by clear and convincing evidence, that the father was unable or unwilling to take care of the child.

B.     The Guardians' Contention Regarding the Guardian ad Litem

[¶15]   The guardians next contend that the court erred by relying on the GAL's report and testimony because the GAL was biased in favor of the father and failed to analyze the child's best interest. They further contend that the court erred in declining to rule on their motion challenging the GAL's investigations.

[¶16]   Although the GAL's report did not explicitly address the best interests of the child, the GAL testified at the hearing that it was in the child's best interests to stay with the father and was subject to extensive cross-examination by the guardians on that issue. We find no error in the court's reliance on the GAL's report and testimony. *See Dyer v. Superintendent of Ins.*, 2013 ME 61, ¶ 12, 69 A.3d 416 ("No principle of appellate review is better established than the principle

that credibility determinations are left to the sound judgment of the trier of fact." (quotation marks omitted)).

[¶17]  The court did err, however, in refusing to consider the guardians' motion concerning the GAL by deferring to the authority of the Chief Judge of the District Court.  The court relied on Rule II(3)(B) of the Maine Rules for Guardians ad Litem, which grants the Chief Judge of the District Court the authority to initiate a review of a GAL, and Rule II(4)(A), which prohibits the Chief Judge from "tak[ing] any action with respect to, or initiat[ing] a review with respect to, a complaint arising from a pending case."  However, Rule II(3)(B) also makes clear that a GAL "is subject to ongoing oversight" and that "[n]othing in these rules limits a judge's right to regulate a Guardian or remove a Guardian from his or her role in a particular proceeding on motion of a party after notice and hearing, or on the judge's own motion . . . ."  The court therefore had the authority to act on the guardians' motion concerning the GAL.

[¶18]  Indeed, often the most effective challenge to the quality, completeness, or competence of a guardian ad litem's work will be accomplished through cross-examination of the GAL at trial.  If a parent or other interested party has filed a motion to remove the GAL or otherwise challenging the GAL's investigations, the court can, and should, hear the motion during the trial and allow examination of the GAL on the pertinent issues.  If the court concludes that the

10

investigation has been insufficient or that the GAL has demonstrated a bias that has made the GAL's testimony unreliable, the court may disregard that testimony in whole or in part. Here, however, the court's nominal failure to consider the guardians' motion was of no consequence. *See* M.R. Civ. P. 61; *see also Shaw v. Packard*, 2005 ME 122, ¶ 13, 886 A.2d 1287. As noted above, the court heard the GAL's testimony, including her analysis of the child's best interest; the guardians were able to thoroughly cross-examine the GAL; and the court was able to fully evaluate the GAL's objectivity and determine the weight to afford the GAL's recommendations. *See Dyer*, 2013 ME 61, ¶ 12, 69 A.3d 416; *Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903 ("Determinations of witness credibility are uniquely within the fact-finder's authority . . . ."). The court's error was therefore harmless.

C.    Transition Order

[¶19]  Lastly, the guardians contend that the court abused its discretion in failing to include a non-compliance provision in the court's transition plan for the child. Title 18-A grants the Probate Court wide discretion in fashioning transitional arrangements that are in the best interest of the child. *See* 18-A M.R.S. § 5-213 (2013) ("In issuing, modifying or terminating an order of guardianship for a minor, the court may enter an order providing for transitional arrangements for the minor if the court determines that such arrangements will assist the minor with

a transition of custody and are in the best interest of the child."); *see also Adoption of Tobias D.*, 2012 ME 45, ¶ 27, 40 A.3d 990. The statute does not, however, mandate that transition plans contain non-compliance provisions. Further, a non-compliance provision is not necessary in every case to ensure that the requirements of a transition plan are subject to judicial enforcement. A party who fails to comply with a transition plan may be subject to a contempt proceeding. *See* M.R. Civ. P. 66(d). Accordingly, the court did not abuse its discretion in formulating its transition order.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Brian Dobson and Kim Tousignant, pro se appellants

Scott Giese, Esq., Biddeford, for appellee Ryan Masoner

Lisa A. Cohen Lunn, Esq., Vafiades, Brountas & Kominsky, LLP, Bangor, Guardian ad Litem

Hancock County Probate Court docket number 2009-019-A
FOR CLERK REFERENCE ONLY