MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 178
Docket:       Fra-19-276
Submitted
  On Briefs:  December 17, 2019
Decided:      December 30, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


IN RE CHILD OF VANESSA G.


PER CURIAM

[¶1]   Vanessa G. appeals from a judgment of the District Court (Farmington, *Dow, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), and (B)(2)(b)(i)-(ii) (2018).[1]   She argues that the court erred in finding that she is an unfit parent.[2]   We affirm the judgment.

## I.  CASE HISTORY

[¶2]   In October 2017, the Department of Health and Human Services filed a petition for a child protection order and preliminary protection order for the mother's newborn child.  *See* 22 M.R.S. §§ 4032, 4034 (2018).  The petition primarily alleged that (1) the child was born drug affected due to the mother's

---

[1] Parentage has not been legally established as to the child's father.  Therefore, the putative father is not a party to this appeal.

[2] The mother does not challenge the court's finding that termination of her parental rights is in the child's best interests.

drug use during pregnancy, (2) the mother was unwilling or unable to follow an appropriate feeding schedule for the child while at the hospital, and (3) the mother's boyfriend was at the hospital and appeared to be under the influence of drugs. That day, the court (*Oram, J.*) entered a preliminary protection order, placing the child in the Department's custody. *See id.* § 4034(2). The mother waived her right to a summary preliminary hearing. *See id.* § 4034(4).

[¶3] In January 2018, the court (*Carlson, J.*) entered an agreed-to jeopardy order. *See* 22 M.R.S. § 4035 (2018). The court found that the child was in jeopardy based on the mother's "substance abuse, inability to recognize and prioritize the needs of her drug affected newborn, and minimal demonstration of a willingness to follow medical recommendations regarding feedings which could seriously harm [the child]."

[¶4] In the fifteen months that followed, the Department engaged in reunification efforts with the mother. A persistent obstacle to reunification was the refusal of the mother's boyfriend to engage with the Department. The Department contended that, as long as the mother and the boyfriend were together, the child should not be placed in the mother's custody unless the boyfriend participated in the reunification process.

[¶5] In a judicial review order dated July 11, 2018, the court stated that the boyfriend "is NOT to be living [with] [the mother] until he engages [with]

[the Department]." In a subsequent judicial review order dated December 11, 2018, the court found that "[the mother] continues to live with her boyfriend" even though "[the boyfriend] has a significant criminal history [and] has not engaged with the Department's attempts at engaging him in services to address his issues."

[¶6] In April 2019, the Department petitioned to terminate the mother's parental rights. *See* 22 M.R.S. § 4052 (2018). The court held a two-day contested hearing on the termination petition in May 2019. Following the hearing, the court issued a judgment terminating the mother's parental rights to her child. In its written order,[3] the court made the following findings by clear and convincing evidence. *See* 22 M.R.S. § 4055(1)(B)(2) (2018). Those findings are supported by evidence in the record. *See In re Children of Benjamin W.*, 2019 ME 147, ¶ 5, 216 A.3d 901.

> [The mother] has made significant progress in her substance abuse treatment, and the Court gives her credit for that. . . .
>
> . . . .
>
> The remaining area of grave concern is [the mother's] ability to recognize and prioritize the needs of the child. . . .
>
> . . . .

---

[3] The order is dated June 28, 2017, but the docket entries indicate it was signed on June 28, 2019.

With respect to child contact, [the mother] has not progressed beyond supervised visits with [the child]. Indeed, [the mother] chose to reduce the supervised visits from three-hour visits twice per week to two-hour visits twice per week, largely because [the mother] struggled to spend a full three hours with [the child] during the visits. She rationalizes this choice by saying that visiting with the child in a small room is like punishing the child, and prioritizing the child's needs over her own requires that she cut the visits short. . . .

. . . .

Another failure to recognize and prioritize [the child's] needs was evidenced by [the mother's] delay in acknowledging the risk to [the child] posed by [the mother's boyfriend]. [The mother] has been in a relationship with [the boyfriend] for most of [the child's] life. [The boyfriend] has a troubling history of substance abuse and criminality, and he refuses to engage with the Department. The Department has long made it clear to [the mother] that it is concerned about [her boyfriend]. The Department offered to work with [the boyfriend] if he were to remain part of the picture with [the child]. In light of [the boyfriend's] refusal to work with the Department, [the mother] knew she had to choose between him and [the child]. [The mother] testified that she broke up with [the boyfriend] early in 2019, about fifteen months into the case, which could hardly be considered as a time frame reasonably calculated to meet the child's needs. Still, the Court does not believe [the mother] on this point. Even in the past few months, the Court finds that [the boyfriend] is still around at [the mother's] home.

[¶7] Based on these findings, the court concluded that the mother's parental rights should be terminated because (1) the mother was unwilling or unable to protect the child from jeopardy and unwilling or unable to take responsibility for the child and those circumstances were unlikely to change within a time reasonably calculated to meet the child's needs and

(2) termination of the mother's parental rights was in the best interests of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii). The mother timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. LEGAL ANALYSIS

[¶8] We review a court's findings of fact as to parental unfitness for clear error and its decision to terminate parental rights for an abuse of discretion. *See In re Child of Ronald W.*, 2018 ME 107, ¶ 6, 190 A.3d 1029. "We will reverse a finding only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *See In re Child of James R.*, 2018 ME 50, ¶ 11, 182 A.3d 1252 (quoting *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199).

[¶9] The court concluded that the mother's parental rights to her child should be terminated because of "her inability to protect the child from jeopardy or take responsibility for [the child] in a time reasonably calculated to meet [the child's] needs." *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court's findings as to its parental unfitness determination are supported by evidence in the record. The court made clear to the mother that, because of the risks he posed to the child, the boyfriend could not be a part of the mother's and the child's lives unless he participated in the reunification process. Although the

boyfriend refused to engage with the Department, the mother, according to her own testimony, remained with the boyfriend. The mother claimed that she had broken up with the boyfriend several months before the termination hearing, but the court did not find this testimony credible, instead concluding, with support in the record, that the boyfriend "is still around at [the mother's] home."[4] *See Adoption of T.D.*, 2014 ME 36, ¶ 16, 87 A.3d 726 (explaining that "credibility determinations are left to the sound judgment of the trier of fact").

[¶10] With these findings, the court supportably found, by clear and convincing evidence, that the mother was an unfit parent. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The mother's failure to acknowledge the risks posed to her child by the boyfriend demonstrates that she is presently unable or unwilling to protect her child from jeopardy and to take responsibility for the child. *See id.* That the mother had not ended her relationship with the boyfriend by the date of the hearing shows that these circumstances are unlikely to change in a time reasonably calculated to meet the child's needs. *See id.* Additionally, as the District Court noted, the mother's decision to cut short her supervised visits because of her inability to spend three full hours with her child further demonstrates that she is unable or

---

[4] The mother and the boyfriend were observed together during February 2019 and observed at her apartment on April 27 and 28, 2019.

unwilling to take responsibility for the child. *See id.* § 4055(1)(B)(2)(b)(ii). For these reasons, there was no error of law or abuse of discretion in the court's termination of the mother's parental rights.

The entry is:

Judgment affirmed.

---

Christopher S. Berryment, Esq., Mexico, for appellant Mother

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Farmington District Court docket number PC-2017-17
FOR CLERK REFERENCE ONLY