MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 60
Docket:        Cum-20-12
Submitted
  On Briefs:   May 4, 2020
Decided:       May 12, 2020

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## IN RE CHILD OF ANGELA S.

PER CURIAM

[¶1]  Angela S. appeals from a judgment of the District Court (Portland, *Eggert, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii), (iv) (2020).[1]  She argues that there was insufficient evidence to support the court's findings of at least one ground of parental unfitness and that termination was in the best interest of the child.  We disagree and affirm the judgment.

---

[1] The child's biological father was never identified.  The man with whom the child resided when these proceedings commenced was not her biological father, but was granted de facto parent status during the proceedings.  The de facto father died in February 2019, while this case was pending.  Paternity testing also showed that the man identified as the legal father in the petition for child protection order was not the child's biological father, and he was subsequently dismissed as a party.  Finally, the amended TPR petition named Lonnie N. and an unknown father as putative fathers.  Despite the Department's efforts, contact was never made with Lonnie N. and paternity was never established.  The court terminated the parental rights of the child's unknown father.

## I. BACKGROUND

[¶2] The Department of Health and Human Services initiated child protection proceedings as to this child in April 2018, alleging that the child was in circumstances of jeopardy due to the mother's unmanaged and significant mental health and substance abuse issues, the mother's inability or unwillingness to recognize unsafe individuals and circumstances, and the de facto father's inability to maintain a sanitary home environment or make safe plans for the child during his frequent hospital stays due to his declining health. At the time, the mother was in a faith-based residential recovery program for her sex addiction and substance abuse and mental health issues.

[¶3] On July 12, 2019, the Department filed a petition to terminate the mother's parental rights,[2] alleging that the child was "subjected to serious neglect, poor hygiene, unsafe individuals in the home, unsanitary living conditions and lack of supervision" while in the mother's care. The Department alleged that termination of the mother's parental rights would be in the child's best interest based on the child's need for permanency and the mother's inability or unwillingness to resolve the circumstances of jeopardy or to take

---

[2] An amended petition was filed on September 24, 2019.

responsibility for the child within a timeframe reasonably calculated to meet the child's needs.

[¶4] The court held a hearing on November 21 and 22, 2019. In an order dated November 25, 2019, the court terminated the mother's parental rights, *see* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii), (iv), and made the following findings of fact, which are supported by competent record evidence, *see In re Children of Danielle M.*, 2019 ME 174, ¶ 6, 222 A.3d 608.

[¶5] The mother has a history of substance abuse and struggles with maintaining her sobriety. She was arrested and charged with endangering the welfare of a child in April 2017, when she left the child alone to go consume alcohol with neighbors. The court found that the Department investigated and substantiated the mother for neglect in May 2017 and that she has not been the custodial parent since then. The court further found that the Department became involved with the family again when the de facto father was hospitalized in February 2018 and ambulance personnel found the child to be dirty, foul smelling, and underdressed for the weather.

[¶6] When the Department became involved in February 2018, the mother was in a residential recovery program that was scheduled to last until November 2018. The court found that the mother "was not successful in

4

completing that program, and at the time of the entry of the [Jeopardy] Order was not in any program to address those issues." The court further found:

> [The mother] has made herself available to visit with [the child] consistently, but those efforts have been thwarted by [the child] herself who has refused to visit [the mother] since June 4, 2019. The Department made a decision not to force [the child] to attend those visits, and neither her counselor, the Department caseworker, nor the GAL has been able to ascertain [the child's] reasoning for her refusal.
>
> . . . .
>
> [The child] has been able to report to her GAL about the life she led up to the point that she was removed from her parent[s'] care and a finding of being subjected to serious neglect, poor hygiene, unsanitary living conditions, and lack of supervision. . . . [S]he remembers being left alone in her apartment by her mother. When asked to draw a picture of how the experience made her feel she produced a very powerful picture introduced into evidence . . . . She seems to have a well developed sense for self preservation for a [child her age].
>
> . . . .
>
> The key consideration in this case relates to [the mother's] ability to complete her rehabilitation efforts within a time frame reasonably calculated to meet [the child's] needs as measured from the child's perspective. . . . [The child] has sent strong signals about her perspective. At the time [the child] started to refuse to attend visits with [the mother], she had already been in Department custody for over a year, and had been out of [the mother's] care for a year prior to that. At that point in time, [the mother] was just starting to make efforts that might lead to her rehabilitation, but even now the time she would need to get to that point is still unknown and speculative. Her efforts came too late, and [the child] needs permanency now.

> [The child] has been thriving in the care of the resource parents . . . . She wants to remain with the [foster family] as her forever home.

> The guardian *ad litem* supports the termination of the parents' parental rights.

[¶7] The court ultimately found, by clear and convincing evidence, that the Department made reasonable efforts to rehabilitate and reunify the family, the mother is unable to protect the child from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet the needs of the child, the mother has been unable to take responsibility for the child within a time reasonably calculated to meet the needs of the child, the mother has failed to make a good faith effort to rehabilitate and reunify with the child in a timely fashion, and termination of the mother's parental rights is in the child's best interest. The mother timely appeals. *See* 22 M.R.S. § 4006 (2020); M.R. App. P. 2B.

## II. DISCUSSION

[¶8] The mother asserts that there was insufficient evidence to support the court's judgment terminating her parental rights. "In order to terminate parental rights, the court must find, by clear and convincing evidence, at least one of the four statutory grounds of parental unfitness." *In re Child of Katherine*

6

*C.*, 2019 ME 146, ¶ 2, 217 A.3d 68 (alterations omitted) (quotation marks omitted). "We will set aside a finding of parental unfitness only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *Id.* (quotation marks omitted).

[¶9] Viewing the record in its entirety, we conclude that competent evidence supports the court's finding that the mother is parentally unfit. *See In re Children of Danielle M.*, 2019 ME 174, ¶ 14, 222 A.3d 608.[3]

[¶10] The mother further contends that the court abused its discretion when it concluded that termination of her parental rights was in the child's best interest. "We review the court's factual findings related to the child's best interest for clear error, and its ultimate conclusion regarding the child's best interest for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens." *In re Children of Christopher S.*, 2019 ME

---

[3] The mother also argues that the court erred in finding that she failed to make a good faith effort to rehabilitate and reunify with the child in a timely fashion. While we acknowledge that evidence in the record reflects the court's finding that the mother "has made some improvements in her life recently," it also supports the court's finding that "[h]er efforts came too late, and [the child] needs permanency now." In any event, "[w]e have said that where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence." *In re Child of Christine M.*, 2018 ME 133, ¶ 6, 194 A.3d 390 (alteration omitted) (quotation marks omitted).

31, ¶ 7, 203 A.3d 808 (quotation marks omitted). "As to the best interests of the children, permanency is the central tenet of the Child and Family Services and Child Protection Act." *In re Children of Jessica D.*, 2019 ME 70, ¶ 8, 208 A.3d 363 (quotation marks omitted). "[T]he court must examine from the child's perspective—not the parent's—the time within which the parent can take responsibility for a child and protect that child from jeopardy." *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824.

[¶11] Here, the child had already been out of her mother's care for a full year when she entered foster care. At the time of the hearing and order, the child had been in foster care for nineteen months. The court found that the mother was "in the beginning phase of recovery work for her alcohol abuse" and explained that "[t]he key consideration in this case relates to [her] ability to complete her rehabilitation efforts within a time frame reasonably calculated to meet [the child's] needs as measured from the child's perspective." The court found that "the time she would need to get to that point is still unknown and speculative. Her efforts came too late, and [the child] needs permanency now." These findings are supported by competent evidence in the record, and the trial court did not abuse its discretion in concluding that termination of the mother's

parental rights was in the child's best interest.[4]  *See In re Children of Christopher S.*, 2019 ME 31, ¶ 7, 203 A.3d 808.

The entry is:

Judgment affirmed.

---

Vicki Mathews, Esq., Scarborough, for appellant Mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2018-25
FOR CLERK REFERENCE ONLY

---

[4] The mother does not explicitly challenge the court's finding that "the Department has made reasonable efforts to rehabilitate and reunify the family." *See* 22 M.R.S. § 4041(1-A) (2020).  To the extent the mother contends that "arguably, the reunification efforts did not exist for that whole period, those ended nearly six months prior when visitation ceased," the argument is undeveloped and deemed waived.  *See In re David H.*, 2009 ME 131, ¶ 43 n.10, 985 A.2d 490.