MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2026 ME 19
Docket:      Yor-24-355
Argued:      November 13, 2025
Decided:     February 26, 2026

Panel:       STANFILL, C.J., and MEAD, LAWRENCE, and DOUGLAS, JJ.

IN RE CHILD OF DANIELLE H.

STANFILL, C.J.

[¶1]  Danielle H. appeals from a judgment of the District Court (Springvale, *Moskowitz, J.*) terminating her parental rights to her child.  During the pendency of the case, the mother was in and out of jail and several treatment facilities for opioid use disorder.  She asserts that the court misapprehended the nature of addiction and recovery when it found that she was unable to protect the child from jeopardy, unable to take responsibility for the child in a time reasonably calculated to meet the child's needs, and failed to make a good faith effort to rehabilitate.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i),(ii),(iv) (2025).  She also argues that the court abused its discretion in concluding that termination was in the child's best interest because the guardian ad litem (GAL) failed to file required reports, attend all of the family team meetings, or meet the mother face-to-face.  Finally, she asserts that the court abused its discretion when it found termination to be in the

child's best interest without explicitly considering a permanency guardianship. Although we are concerned by the GAL's performance in this case, it did not prevent the court from independently determining that termination was in the child's best interest. Because we conclude that the evidence was sufficient to support a finding of parental unfitness on at least one basis and that the court did not abuse its discretion in its best interest finding, we affirm.

## I. BACKGROUND

[¶2]   The child was born drug-affected in February 2023.   The Department of Health and Human Services immediately petitioned for a child protection order and preliminary protection order, and the child has been in the Department's custody ever since.  The mother agreed to an order finding jeopardy based on her chronic substance use disorder, including substance use during her pregnancy.

[¶3]  The Department filed a petition to terminate the mother's parental rights on February 28, 2024, and a hearing was held on June 26 and 27, 2024. The GAL testified at the termination hearing, and the mother cross-examined her about her performance throughout the case. The GAL testified that she had never met the mother in person or observed a visit between the mother and the child.  She also testified that she had missed four out of nine family team

meetings and wrote only one report for the case. On July 13, 2024, the court entered a judgment terminating the mother's parental rights. The mother timely appealed. M.R. App. P. 2B(c).

## II. DISCUSSION

### A. Parental Unfitness

[¶4] We review the trial court's findings of unfitness and best interest for clear error, and we uphold those findings if they are supported by any competent record evidence. *In re Child of Rebecca J.*, 2019 ME 119, ¶ 5, 213 A.3d 108. "Proof of any one of the four statutory definitions of parental unfitness . . . is independently adequate to justify termination, if supported by clear and convincing evidence." *In re Charles G.*, 2001 ME 3, ¶ 6, 763 A.2d 1163.

[¶5] During most of the sixteen months between the child's birth and the termination hearing, the mother was participating in the Adult Treatment and Recovery Court.[1] The recovery court program required that she participate in

---

[1] The Adult Treatment and Recovery Courts, formerly known as Adult Drug Treatment Courts, are for "individuals whose involvement with the criminal justice system has been fueled by a serious substance use disorder." *Adult Treatment and Recovery Courts*, State of Maine Judicial Branch, https://www.courts.maine.gov/courts/treatment/adult.html [https://perma.cc/NP3Y-CJQU] (last visited Jan. 15, 2026). Maine also offers Family Recovery Courts, which are "specialty civil dockets that work with families whose children are at risk of abuse or neglect due to parental substance use disorders and/or co-occurring disorders." *Family Recovery Court*, State of Maine Judicial Branch, https://www.courts.maine.gov/courts/treatment/family.html [https://perma.cc/6QP3-FS4G] (last visited Jan. 15, 2026). The mother in this case was involved in the Adult Treatment and Recovery Court through the criminal system and not in the Family Recovery Court.

4

treatment, and stints in jail could be imposed as sanctions for her failure to abide by the rules of the program. During the pendency of the protective custody case, the mother spent a total of six months in jail and spent most of the rest of the time in residential programs for substance use treatment. She left one treatment facility after only two days and, before finishing another program, was discharged from it, arrested, and returned to jail. At the time of the termination hearing, the mother was participating in a third residential treatment program but had months remaining to complete it, had no long-term plan for her life after that, and was not sure when she would be able to care for the child.

[¶6] The mother argues that the trial court failed to account for the chronic nature of substance use disorder and showed "a tragic misapprehension about the nature of addiction and recovery, which may result in a relapse or a series of relapses, which are . . . an important part of the recovery process itself." She argues that this misunderstanding undermines not only the finding that she failed to make a good faith effort to rehabilitate herself but also the finding that termination is in the best interest of the child.

[¶7] We acknowledge a possible inconsistency between Maine's statutory child protection framework and the current understanding of the

time needed for recovery from opioid use disorder. Section 4055(1-A)(C) of Title 22 provides that the court may presume parental unfitness for a child in departmental custody when "the parent has a chronic substance use disorder, and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time." Significantly, the statute provides that there is chronic substance use when "a parent has been unable to provide safe care of a child for a period of 9 months due to substance use." 22 M.R.S. § 4055(1-A)(C); *see also* 22 M.R.S. § 4052(2-A)(A) (2025) (generally requiring the Department to file a termination petition when a child has been in foster care for fifteen months).

[¶8] In contrast, the *minimum* time required to complete the Adult Treatment and Recovery Court is thirteen months—and it is frequently much longer. *See* State of Maine Judicial Branch, *Maine Treatment and Recovery Court Participant Handbook* 15-19 (2022), available at https://www.courts.maine.gov/courts/treatment/trc-participant-handbook.pdf [https://perma.cc/6U7X-9BGU]. This length of time is necessary partly because relapses, also known as symptom recurrences, are an expected part of recovery for many individuals. *See* All Rise, *Adult Treatment Court Best Practice Standards* 7-8 (2025), available at https://allrise.org/wp-

content/uploads/2025/11/Adult-Treatment-Court-Best-Practice-Standards_11.7.2025.pdf [https://perma.cc/Q8MR-KQDC]. "[P]ersons with serious mental health, substance use, and trauma disorders often remain vulnerable to severe symptom recurrence over many years or decades . . . Addressing these recovery management needs is critical to avoid future symptom recurrence . . . ." *Id.* at 7. The program's length also ensures that individuals do not fall through the cracks and are given the time to build the skills and support necessary to maintain sobriety once they "graduate" from the treatment court. *Id.* at 7-8, 67-74.

[¶9] On the other hand, we have also said that "permanency is the central tenet of the Child and Family Services and Child Protection Act," and the court views the timeframes from the perspective of the child and not the parent in determining whether to terminate parental rights. *In re Child of Angela S.*, 2020 ME 60, ¶ 10, 232 A.3d 215 (quotation marks omitted). Here, the trial court found, with support in the record, that the mother had a longstanding substance use disorder, she had an inconsistent history with multiple treatment programs, her future sobriety was uncertain, and her future plans were unclear. The court concluded that the mother was unwilling or unable to protect the child from jeopardy and those circumstances were unlikely to change within a

time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i). It also found that she was unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs. *See id.* § 4055(1)(B)(2)(b)(ii). We conclude that the court did not clearly err because there is competent evidence in the record to support the court's finding that the mother is parentally unfit.

## B.    Child's Best Interest

[¶10]  We review for an abuse of discretion the trial court's conclusion concerning the best interest of the child. *In re Child of Christian D.*, 2025 ME 16, ¶ 4, 331 A.3d 409. We view "the facts, and the weight to be given to them, through the trial court's lens." *Id.* (alteration and quotation marks omitted).

[¶11]  The mother argues that that the court was unable to make the best interest determination in the absence of a meaningful and reliable investigation and report from the GAL. GALs are required to submit written reports, with recommendations, to the court reasonably in advance of each court hearing (except a summary preliminary hearing) and in any event at least every six months. 22 M.R.S. § 4005(1)(B), (D) (2025). A GAL is required to "[c]omplete assignments and written reports in a timely manner, and communicate effectively with the court in motions, reports, recommendations, and

testimony." M.R.G.A.L. 1(b)(9). The GAL must have face-to-face contact with the child at least once every three months. 22 M.R.S. § 4005(1)(B). A GAL's investigation must include interviews of the parents and other persons involved in caring for the child. M.R.G.A.L. 4(c)(2)(E). A GAL is subject to the oversight of the court. *See In re Adoption of T.D.*, 2014 ME 36, ¶ 17, 87 A.3d 726. Indeed, if a GAL fails to perform the duties that are required, the court may remove the GAL from the case. M.R.G.A.L. 6(a), (d).

[¶12] GAL reports, if reliable, can be critical to a court's determination of the child's best interest. The GAL is a "disinterested party and an agent of the court" and "possesses competence and experience to make reasoned judgments about the reliability of information" because of the GAL's unique ability to review all relevant records and interview the child and involved persons. *In re Chelsea C.*, 2005 ME 105, ¶ 14, 884 A.2d 97. Given the GAL's central role in child protection proceedings, it is the responsibility of everyone involved, including the court, to address any deficiencies in the GAL's performance.

[¶13] Here, the GAL did not interview the mother before the termination hearing, did not observe any of the visits, did not visit the child as required, and failed to attend four out of nine family team meetings. The GAL filed only one

report, a year after the case began and well before the termination hearing. The mother argues that the GAL "failed in her statutory and court-ordered obligations to conduct a thorough investigation of the facts and circumstances of this case in 'pursuit of the child's best interest.'"

[¶14]  As we have explained, the GAL's compliance with her statutory duties "does not constitute a discrete element requiring proof in a parental rights termination hearing." *In re Aurora M.*, 2018 ME 4, ¶ 10, 177 A.3d 617. The mother cross-examined the GAL and highlighted the deficiencies in the GAL's performance through that cross-examination. *See Adoption of T.D.*, 2014 ME 36, ¶ 18, 87 A.3d 726 ("[O]ften the most effective challenge to the quality, completeness, or competence of a guardian ad litem's work will be accomplished through cross-examination of the GAL at trial."). It is up to the court to determine how much weight, if any, to give to the GAL's testimony and recommendations. *See id.*

[¶15]  In this case, the court did not indicate that it relied on the GAL's recommendations or report in concluding that termination of the mother's parental rights was in the child's best interest. Instead, the court considered the relevant factors based on the other evidence it heard, including the child's age, need for permanency, and the mother's inability to parent, in reaching its

conclusion. The GAL's lack of involvement, while unacceptable, did not prevent the court from making its own independent determination, based on competent evidence, that termination of the mother's parental rights is in the child's best interest.

[¶16] Finally, the court did not abuse its discretion by failing to explicitly consider a permanency guardianship when deciding whether termination was in the child's best interest. The court considered the child's need for permanency and specifically found that, because of that need, it was "unwilling to provide [the mother] with any additional time to attempt reunification." *See In re Child of Christian D.*, 2025 ME 16, ¶¶ 8-11, 331 A.3d 409 (holding that there was no abuse of discretion in ordering termination of parental rights instead of permanency guardianship when the trial court made specific, independent findings that termination was in the child's best interest). Although the court did not explain why it rejected a permanency guardianship, in the absence of a motion for further findings pursuant to M.R. Civ. P. 52(b), we assume the court made the findings necessary to support the judgment. *In re Children of Quincy A.*, 2023 ME 49, ¶ 26, 300 A.3d 832. We conclude that the court did not abuse its discretion when it terminated the mother's parental rights.

The entry is:

Judgment affirmed.

---

Sara A. Murphy, Esq. (orally), Pierce Atwood LLP, Portland, for appellant Mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Springvale District Court docket number PC-2023-10
FOR CLERK REFERENCE ONLU